STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. JACK WOODROW MULVIHILL, DEFENDANT-RESPONDENT.

Argued September 15, 1970—Decided October 29, 1970.

*Mr. Raymond R. Trombadore,* First Assistant Prosecutor, argued the cause for appellant (*Mr. Michael R. Imbriani,* Somerset County Prosecutor, attorney).

154

Mr. *Daniel R. Coburn,* Assistant Deputy Public Defender, argued the cause for respondent (*Mr. Stanley C. Van Ness,* Public Defender, attorney).

The opinion of the court was delivered by

FRANCIS, J. Defendant Mulvihill was charged by indictment with violating *N. J. S. A.* 2A:90-4 in that he allegedly committed an assault and battery upon a Somerville policeman who was in uniform and acting in the performance of his duty at the time. He was convicted at a jury trial in which the court refused to allow him to defend by asserting self-defense and declined to submit that issue to the jury for determination. On appeal, the conviction was reversed and a new trial ordered. *State v. Mulvihill,* 105 *N. J. Super.* 458 (App. Div. 1969). This Court granted the State's petition for certification. *54 N. J. 560* (1969).

The testimony reveals that Officer Dowling was operating a patrol car along a public street in Somerville, N. J. While doing so, he observed the defendant Mulvihill, a 20-year-old youth, and two other persons standing in front of a pizzeria. He noticed Mulvihill pouring something from a bottle into a paper cup held by one of the other two persons. Since there was a local ordinance prohibiting the drinking of alcoholic beverages on a public street, the officer stopped the car, got out and called to the young men to come over to him. As they did so, Mulvihill threw the paper cup on the sidewalk. Dowling asked him what was in the cup and defendant did not answer.

The testimony as to the events which immediately followed is in conflict. However, for the purpose of determining whether the legal issue of self-defense was available for jury consideration, it is necessary to consider the facts in the light most favorable to the defendant. According to Mulvihill, when he failed to disclose what he had been drinking the officer grabbed him and asked to smell his breath. He held his breath and remained silent, whereupon Dowling shook him "back and forth" by the shoulders and said "I

should arrest you, you punk." Mulvihill tried to pull away and Dowling "jerked him back around" with the result that both men fell. They arose with Dowling still holding him. When he tried to pull free, Dowling struck defendant on the side of the head with his gun lacerating his scalp. Mulvihill then fell toward Dowling and they both went down again. The officer's right hand was being held by Mulvihill who was trying to keep the gun pointing away from himself, while the officer was endeavoring to direct it at him and saying "Stop or I'll shoot." Mulvihill testified that at this time he was trying to avoid being shot. Then the gun went off, harmlessly, and with his right hand Mulvihill punched the officer in the left side of the face. It was for this blow that he was indicted. In the meantime, other officers appeared and defendant was immobilized.

On the assumption *as a matter of law* that Mulvihill had been arrested before he struck the allegedly criminal blow, the trial court informed defense counsel that no discussion of or reliance upon self-defense would be permitted in summation, nor would that issue be submitted in the charge for consideration by the jury. The action was taken because the court believed (as did the trial court in *State v. Washington,* 57 *N. J.* 160 (1970), decided today) it was required by *State v. Koonce,* 89 *N. J. Super.* 169 (App. Div. 1965). That belief, of course, was incorrect.

*Koonce* held that "a private citizen may not use force to resist arrest by one he knows or has good reason to believe is an authorized police officer engaged in the performance of his duties, whether or not the arrest is illegal under the circumstances obtaining." 89 *N. J. Super.* at 184. The opinion put to rest the notion that the common law rule existing in some jurisdictions, which permits a citizen to resist, even with reasonable force, an unlawful arrest by a police officer, was applicable in New Jersey. Instead, the Appellate Division adopted the above quoted contrary doctrine, and we think rightly so. Accordingly, in our State when an officer makes an arrest, legal or illegal, it is the duty of

the citizen to submit and, in the event the seizure is illegal, to seek recourse in the courts for the invasion of his right of freedom.

However, as the Appellate Division said in reversing the conviction here, it went no further in *Koonce* than to hold that the citizen must submit peaceably to an apparently authorized arrest or other apparently lawful restraint by a police officer, even if it later proves to have been illegal. If the citizen resists the arrest, the officer is not only justified in but has the duty of employing such force as is reasonably necessary to overcome the resistance and accomplish the arrest. *Fisher, Laws of Arrest,* § 133, p 295 (1967); and *cf. State v. Smith,* 127 *Iowa* 534, 103 *N. W.* 944, 945–946 (1905). But, as the Appellate Division noted, that principle is not dispositive in all cases of an arrestee's right to claim self-defense to a charge of assault and battery on the officer. If, in effectuating the arrest or the temporary detention, the officer employs excessive and unnecessary force, the citizen may respond or counter with the use of reasonable force to protect himself, and if in so doing the officer is injured no criminal offense has been committed. 105 *N. J. Super.* at 462; and see *State v. Montague,* 55 *N. J.* 387, 404 (1970); *State v. Williams* 29 *N. J.* 27, 39 (1959); *Bullock v. State,* 65 *N. J. L.* 557 (E. & A. 1900); *People v. Soto,* 80 *Cal. Rptr.* 627, 630 (Ct. App. 1969); *People v. Curtis,* 70 *Cal.* 2d 347, 74 *Cal. Rptr.* 713, 450 *P.* 2d 33 (1969); *Mullis v. State,* 196 *Ga.* 569, 27 *S. E.* 2d 91 (1943); 5 *Am. Jur.* 2d, *Arrest,* § 94, p. 779 (1962); *Fisher, Laws of Arrest, supra,* §§ 133, 138.

There is sound reason for a difference in the rights and duties of the citizen in the two situations. Despite his duty to submit quietly without physical resistance to an arrest made by an officer acting in the course of his duty, even though the arrest is illegal, his right to freedom from unreasonable seizure and confinement can be protected, restored and vindicated through legal processes. However, the rule permitting reasonable resistance to excessive force of the

officer, whether the arrest is lawful or unlawful, is designed to protect a person's bodily integrity and health and so permits resort to self-defense. Simply stated, the law recognizes that liberty can be restored through legal processes but life or limb cannot be repaired in a courtroom. And so it holds that the reason for outlawing resistance to an unlawful arrest and requiring disputes over its legality to be resolved in the courts has no controlling application on the right to resist an officer's excessive force. *People v. Curlis, supra,* 70 Cal. 2d 347, 74 *Cal. Rptr.* at 719.

▓▓ Two qualifications on the citizen's right to defend against and to repel an officer's excessive force must be noticed. He cannot use greater force in protecting himself against the officer's unlawful force than reasonably appears to be necessary. If he employs such greater force, then he becomes the aggressor and forfeits the right to claim self-defense to a charge of assault and battery on the officer. See *Restatement, Torts* 2d, § 70, p. 118 (1965). Furthermore, if he knows that if he desists from his physically defensive measures and submits to arrest the officer's unlawfully excessive force would cease, the arrestee must desist or lose his privilege of self-defense.

▓▓ It has been suggested that the latter qualification is not reasonable because it would require a citizen being subjected to excessive force or attack and defending against it to make a split second determination, amounting to a gamble, as to whether if he terminates his defensive measures, he will suffer further beyond arrest. But application of the rule does not require such action as should follow opportunity for detached reflection. It merely commands that the citizen's conduct be reasonable in the light of all the circumstances apparent to him at the moment. And thus it is a counter-protective measure for the original aggressor officer. Administration of the rule should be no more difficult than those dealing with the duty of an assaulted person to retreat to avoid the attack or the duty not to continue the affray after the original aggressor ceases the assault; once the danger is

past, the original victim cannot continue measures that were originally defensive. *Cf. State v. Abbott*, 36 *N. J.* 63, 69–73 (1961); *State v. Williams, supra*, 29 *N. J.* at 39; *Gray v. State*, 463 *P.* 2d 897, 910 (Alas. 1970); *People v. Evans*, 2 *Cal. App.* 3d 877, 82 *Cal. Rptr.* 877, 881 (1969); *People v. Fort*, 119 *Ill. App.* 2d 350, 256 *N. E.* 2d 63, 66 (1970); *State v. Washington*, 160 *N. W.* 2d 337 (Iowa Sup. Ct. 1968); *State v. Anderson*, 230 *N. C.* 54, 51 *S. E.* 2d 895 (1949); Model Penal Code, Tentative Draft No. 8 § 3.04, p. 18–19 (1958).

 Applying the stated principles to the present case, it is plain that the trial court erred in eliminating self-defense from the case as a matter of law. Two bases exist for that conclusion. The jury could have found on the disputed facts that Dowling had informed Mulvihill expressly, or by his course of conduct, that he was under arrest for an ordinance violation offense. If such a finding were made, it would follow that Dowling was justified in using such force in overcoming Mulvihill's resistance as was reasonably necessary to make the arrest effective. But it was open to the jury to find also that the resistance was such that the officer, in attempting to overcome it, employed unnecessary and excessive force when he drew his gun and struck Mulvihill in the head with it so as to cause a lacerated scalp. They could have found further that this caused Mulvihill reasonably to feel and to fear that an effort was being made to point the gun at him and to fire it. Assuming a finding of such facts and that they preexisted the charged assault and battery on the officer, defendant was entitled to have the issue of self-defense passed upon by the jury.

 The second and more crucial basis for accepting self-defense as a legitimate contention in the case was not considered at all at the trial level. The court assumed as a matter of law that Mulvihill had been arrested before the alleged assault and battery was committed. But there was a clear factual dispute on that point. According to defendant, Officer Dowling simply said: "I should arrest you, you

punk." Obviously that statement did not constitute an arrest nor did it, in conjunction with the circumstances existing when the statement was made (as the jury could have found them), constitute a temporary detainer by an officer in the pursuit of his official duty for purposes of investigation. *Cf. Fisher, Laws of Arrest, supra,* § 118. If Mulvihill was believed on this aspect of the case, then the fracas between the two men took on the character of a combat between two private individuals. In such situation he was entitled to have the jury decide whether in striking Dowling with his fists he was defending himself against the officer's onslaught with a gun.

Accordingly, we agree with the Appellate Division that the conviction must be reversed and the case remanded for retrial. Assuming substantially the same factual controversy on the retrial, the jury must be called upon to decide whether Mulvihill was arrested before the physical combat arose. Then they should be instructed that once that issue has been decided they should consider the matter of self-defense in accordance with the controlling principles outlined above.

As explained earlier, we have outlined the disputed facts most favorably to the defendant. That was done in order to deal with his contention that the claim of self-defense was an issue which the trial court was obliged to submit to the jury for determination. In holding that the evidence was sufficient to require such submission, we are not indicating a view that defendant's version of the facts should be accepted. The problem of credibility between defendant and the State's witnesses is a matter for resolution by the jury. Officer Dowling's account of the affair, as noted by the Appellate Division, was that he placed defendant Mulvihill under arrest for drinking on a public street. Then "[a]s he told defendant to get into the police car, the latter struck him on the left side of the face. He was knocked to the ground by the blow and immediately got up and grabbed defendant. Defendant and the officer 'tussled' and again both fell to the ground. The officer again got up from the ground

and told defendant that he was going to handcuff him and put him into the police car, whereupon defendant kicked the officer in the groin and grabbed him around the waist with one hand on the officer's gun, causing both of them to fall to the sidewalk a third time. As they were on the ground, the officer and defendant struggled for the officer's gun and it discharged against the side of the adjoining building." 105 *N. J. Super.* at 460–461. If that version of the fracas is believed by the jury, the defendant would be guilty of the offense charged against him, and accordingly the jury would not reach the question whether the officer used excessive force in overcoming defendant's resistance to his removal to police headquarters.

The judgment of the Appellate Division is affirmed and the cause remanded for new trial.

*For affirmance*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.